## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISON

| | |
|---|---|
| ARMANDO GUTIERREZ #K57497, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Case No. 18-1478-SMY |
| JOHN BALDWIN, KENT BROOKMAN, | ) |
| KIMBERLY BUTLER JASON HART, | ) |
| JEFFREY HUTCHINSON, JACQUELINE | ) |
| LASHBROOK, and WILLIAM SPILLER, | ) |
| | ) |
|     Defendants. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, JOHN BALDWIN, KENT BROOKMAN, KIMBERLY BUTLER JASON HART, JEFFREY HUTCHINSON, JACQUELINE LASHBROOK, and WILLIAM SPILLER, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, hereby file their Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in support thereof, state as follows:

### INTRODUCTION

Plaintiff, Armando Gutierrez #K57497, is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Menard Correctional Center ("Menard"). On August 9, 2018, Plaintiff initiated the instant action pursuant to 42 U.S.C. §1983. [Doc. 1]. On April 29, 2020, Plaintiff filed an Amended Complaint. [Doc. 62]. Pursuant to Plaintiff's Amended Complaint, Plaintiff proceeds on the following claims:

**COUNT 1:** Fourteenth Amendment Due Process claim against Defendants Baldwin Brookman, Butler, Hart, Hutchinson, Lashbrook, and Spiller.

**COUNT II:** Eighth Amendment unconstitutional conditions of confinement claim against

Defendants Baldwin, Butler, Hutchinson, and Lashbrook. [Doc. 62].

Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim because even if Plaintiff's due process rights were invoked, he received all protections under the *Wolff* standard. Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment unconstitutional conditions claim because the conditions Plaintiff alleges do not rise to the level of a constitutional violation and assuming, *arguendo*, they did, the Defendants were not deliberately indifferent. Defendants are also entitled to judgment on the basis of qualified immunity and because Plaintiff cannot provide evidence to support a claim for punitive or compensatory damages. For the reasons that follow, the Court should grant Defendants' motion for summary judgment and enter judgment in favor of Defendants and against Plaintiff.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1. Plaintiff has been incarcerated within the Illinois Department of Corrections ("the IDOC") since 2002, and his allegations stem from his incarceration at Menard Correctional Center ("Menard"). [Exhibit 1, Plaintiff's Deposition, 12:1-2; Doc. 62].

2. Plaintiff alleges he suffers from worsening back problems andheartburn, and hurt his knee and head on the top bunk due to the conditions in North II at Menard. [Ex. 1, 116: 12-20].

3. John Baldwin, during the relevant time period, was the Acting Director of the Illinois Department of Corrections. [Doc. 73].

4. Kent Brookman, during the relevant time period, was the Chairman of the Adjustment Committee at Menard. [Doc. 73].

5. Kimberly Butler was the Warden at Menard from April 2014 until April 2016.

---

[1] Defendants dispute many of Plaintiff's claims but admit the following facts for the sole purpose of the instant motion because, at this stage, the Court must consider all reasonable inferences in Plaintiff's favor. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312–13 (7th Cir.1986).

[Doc. 73].

6.      Jason Hart, during the relevant time period, was a member of the Adjustment Committee at Menard. [Doc. 73].

7.      Jeffrey Hutchinson was the Warden at Menard from October 3, 2016 until December 30, 2016. [Doc. 73].

8.      Jacqueline Lashbrook was the Warden at Menard from January 2017 until February 2019. [Exhibit 2, Lashbrook Responses to Plaintiff's First Set of Interrogatories, #3].

9.      William Spiller, during the relevant time period, was a Lieutenant at Menard. [Doc. 73].

**Count I: Plaintiff Offender Disciplinary Report (ODR) at Menard in 2015**

10.     On August 27, 2015, Plaintiff received an Offender Disciplinary Report ("ODR") for the offense of 205: Security Threat Group. [Exhibit 3, Adjustment Committee Records on August 27, 2015 Ticket, Bates 001924].

11.     Plaintiff was served a copy of this August 27, 2015, ODR by a staff member by the name of "C. Young" on August 27, 2015, at approximately 6:10 p.m. [Ex. 3, Bates 001924; Ex. 1, 75: 1-6].

12.     Plaintiff refused to sign the ODR and chose to not request any witnesses. [Ex. 3, Bates 001924; Ex. 1, 75: 23-25, 76:5-12].

13.     On September 3, 2015, Plaintiff attended a hearing on his ODR. [Ex. 3, Bates 001922-001923; Ex. 1, 76:13-15, 76:20-22].

14.     Plaintiff provided a written statement to the Adjustment Committee on September 3, 2015. [Ex. 3, Bates 001922-001923; Ex. 1, 81:25-82:1-2].

15.     Plaintiff did not lose any good time credit as a result of being found guilty of the

205: Security Threat Group offense at his ODR hearing. [Ex. 3, Bates 001922-001923].

16.     The Adjustment Committee recommended the following discipline: 1-year C-grade status, 1- year segregation, 1-year commissary restriction, and 6-months contact visit restrictions. [Ex. 3, Bates 001922-001923].

17.     Plaintiff received a copy of the Adjustment Committee's Final Summary Report, which contained a section titled "Basis for Decision" wherein the Committee wrote what evidence was relied on and the reasons for their decision. [Ex. 3, Bates 001922-001923; Ex. 1, 84:14-17].

18.     Plaintiff appealed the Committee's decision to the Administrative Review Board ("ARB") on September 11, 2015, which was received by the ARB on December 17, 2015. [Ex.3, Bates 001933; Ex. 1, 84:18-20].

19.     On May 11, 2016, the ARB remanded the ODR back to the Adjustment Committee, requiring the Committee to specifically address the reliability of the confidential sources and provide the updated findings to Plaintiff and the ARB. [Ex. 3, Bates 001933].

20.     The Adjustment Committee addressed the ARB's concerns, and provided an updated final summary report. [Ex. 3, Bates 001931 – 001932].

21.     After the supplement, the ARB affirmed the decision of the Adjustment committee and denied Plaintiff's grievance on August 24, 2017, finding compliance with the procedural due process safeguards outlined by DR504. [Ex.3, Bates 001935].

**Count II: Plaintiff's alleged unconstitutional conditions in North II at Menard**

22.     Plaintiff served a portion of his recommended 1-year segregation term in North II segregation at Menard from September 3, 2015 until November 20, 2015, when he transferred to Pontiac Correctional Center ("Pontiac"). [Ex. 1, 111:2-7; Exhibit 5, Living Unit History, Bates 001578-001580].

23.    Plaintiff alleges Defendants Baldwin, Butler, Hutchinson, and Lashbrook violated his Eighth Amendment rights when he was housed in North II segregation at Menard for subjecting his to alleged unconstitutional condition. [Doc. 62]. Specifically, Plaintiff alleges there was blood, urine, feces, spit, bodily fluids, and black mold in the cells while housed in North II at Menard. [Ex.1, 94:1-19]. He also alleges there was sewage by the toilet and gnats in the cells. [Ex.1, 95:19-22].

24.    Plaintiff was housed in cell 453 on 4-Gallery for only one day when he first arrived in North II. [Ex. 5].

25.    Plaintiff was housed in cell 850 on 8-Gallery for less than one day while in North II. [Ex. 5].

26.    Plaintiff was housed in cell 825 from September 4, 2015 until October 2, 2015 and then from October 2, 2015 until November 4, 2015. [Ex. 5].

27.    Plaintiff was housed in cell 829 from November 4, 2015 until his transfer to Pontiac on November 20, 2015. [Ex. 5].

28.    Plaintiff is responsible for cleaning his own cell. [Ex. 1, 87:25-88:1-5].

29.    Cleaning supplies are passed out in North II once a week. [Ex. 1, 88:19-25].

30.    Plaintiff received cleaning supplies weekly while he was housed in North II up until his transfer to Pontiac on November 20, 2015. [Exhibit 6, North II cleaning logs].

31.    IDOC contracted with a pest control company to provide semi-regular services at Menard, about once a month, to address and pest or rodent issues. [Exhibit 4, Deposition of Kimberly Butler, 49:21-25-50:1-10].[2]

32.    Plaintiff never met the Defendants one-on-one or face-to-face. [Ex. 1, 62:13-22,

---

[2] Portions of this Exhibit have been redacted in accordance with the security designations served upon Plaintiff's counsel pursuant to the Parties joint Protective Order. [Doc. 86].

64:17-23, 68:3-7, and 69:14-21].

33.    Plaintiff's only alleged communications to the Defendants are through the 15 collective letters Plaintiff alleges he sent to the Defendants Butler, Lashbrook, Hutchinson, and Baldwin. [Ex. 1, 62:13-22, 64:17-23, 68:3-7, and 69:14-21].

34.    Per the Warden's kite logs, the only correspondence received by the Warden's Office from Plaintiff was received on September 28, 2015, in which Plaintiff complained about the grievance office not responding to his grievance. [Exhibit 7, Warden Kite Log for 2015, Bates 000502].

35.    Plaintiff's one grievance regarding the alleged unconstitutional conditions in North II was submitted October 12, 2015, while he was still housed at Menard. [*See* Exhibit 8, Plaintiff's ARB grievance records, Bates 000108-000111.  This grievance was sent directly to the ARB for review and did not have grievance officer or Warden's office responses. [*Id.*].

36.    There is no evidence that the Defendants received or otherwise reviewed Plaintiff's grievance regarding the alleged unconstitutional conditions in North II. [Ex. 8].

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986). Not every conceivable inference must be drawn, but only **reasonable** inferences. *Bartman*

*v. Allis-Chalmers Corp.*, 799 F.2d 311, 312–13 (7th Cir.1986) (emphasis added).

To defeat a motion for summary judgment, a plaintiff must show concrete evidence documenting a genuine issue of fact which is material in the sense that it is outcome determinative. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2007). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). A plaintiff must show, not only that there is a factual dispute, but also that there is sufficient evidence to enable a jury to render a verdict in plaintiff's favor. *Anderson*, 477 U.S. at 249. "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors . . . ." *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994).

## **ARGUMENT**

### I.   **Plaintiff is not entitled to the mandatory injunctive relief he seeks as there is no ongoing violation and such relief is barred by the PLRA.**

The Eleventh Amendment prevents courts from granting injunctive relief where there is no continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 69 (1985); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–03 (1984). To award injunctive relief, it is not sufficient to show a specific instance of misconduct that occurred in the past. *Champman v. U.S. Marshal for Northern Dist. Of Illinois*, 584 F.Supp.2d 1083, 1092 (7th Cir. 2008) (citing *Daniels v. Southfort*, 6 F.3d 482, 485 (7th Cir. 1993)).

Plaintiff's requests for injunctive relief are contrary to the Prison Litigation Reform Act ("PLRA"). The PLRA states that injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm, and not be contrary to public policy. The Court's power to grant

preliminary injunctive relief is limited by Section 3626(a)(2) of the PLRA (18 U.S.C. §3626(a)(2);

*Westefer v. Snyder*, 689 F.3d 679, 683 (7th Cir. 2012). Section 3626(a)(2) of the PLRA provides

as follows:

> (2) Preliminary injunctive relief. – In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

As it stands, Plaintiff's requested injunctive relief would ask the Court to create policy

mandating what the IDOC should and should not do in circumstances that concern the day-to-day

safety and security of the facility. *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point

repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials

have broad administrative and discretionary authority over the institutions they manage") (internal

quotation marks and citation omitted). *Accord Sandin v. Connor*, 515 U.S. 472, 482 (1995)

(eschewing an approach that would lead to "the involvement of federal courts in the day-to-day

management of prisons, often squandering judicial resources with little offsetting benefit to

anyone."); *See also Johnson v. California*, 543 U.S. 499, 529 (2005) (Stevens dissenting opinion,

"Well before *Turner*, this Court recognized that experienced prison administrators, and not judges,

are in the best position to supervise the daily operations of prisons across this county."). To grant

Plaintiff relief would allow Plaintiff to dictate the terms of his own confinement and ultimately,

interfere with the day-to-day operations of the IDOC. Therefore, as Plaintiff has not suffered an

ongoing harm and such relief is contrary to public policy and would run afoul of the PLRA, Plaintiff's claim for injunctive relief should be denied.

**II.     Defendants are entitled to summary judgment on Count I because they did not violate any of Plaintiff's Fourteenth Amendment Due Process rights and because Plaintiff was awarded all protections under *Wolff*.**

Prisoners retain certain constitutional rights while imprisoned, including protections of the Due Process Clause.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In the prison disciplinary context, inmates are entitled to due process only when they face deprivation of life, liberty, or property.  *Id.*  A prisoner's due process liberty interest is typically triggered in two scenarios: when a prisoner loses good time credits (thereby lengthening the overall period of incarceration) *see Wolff v. McDonnel*, 418 U.S. 539, 554, 94 S. Ct. 2963, 2973, 41 L. Ed. 2d 935 (1974); or when prison officials impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). An "atypical and significant hardship" may arise when an inmate is placed in disciplinary segregation for an extended period of time. *See, e.g.*, *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). Disciplinary segregation can only trigger due process protections depending on the duration and conditions of the segregation.  *Id.*

When determining whether a prisoner is subjected to an atypical and significant hardship, courts consider the duration of the hardship and the specific conditions of confinement. *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015). Courts have not adopted precise, bright line standards for making such a determination. However, the Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 487, 115 S. Ct. 2293, 2302, 132 L. Ed. 2d 418 (1995), that a prisoner's 30 day period in disciplinary segregation did not warrant due process protections. Longer periods, such as those lasting six months or more, will clearly implicate due process protections. *See Marion v. Columbia*

*Correction Inst.*, 559 F.3d 693, 699 (7th Cir. 2009) (240 day period in segregation sufficient to state due process claim); *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997) (one year in segregation sufficient to state due process claim). Here, Plaintiff did not lose good time credit but did receive one year of disciplinary segregation; therefore, for the purpose of this Motion, Defendants do not contend the length of segregation time in this matter did not implicate due process protections. [Ex. 3, Bates 001922-001923].

The Court in *Wolff v. McDonnell,* 418 U.S. 539 (1974), set forth the minimum due process requirements for prison disciplinary proceedings when the prisoner has been charged with serious misconduct which could result in loss of good time credits, punitive segregation, or which might also be punishable in state criminal proceedings. In these circumstances, an inmate must receive the following process: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidencerelied on and the reasons for the disciplinary action. *Wolff,* 418 U.S at 563-567. Here, the record reflects Plaintiff was awarded all due process protections under *Wolff.*

Plaintiff received the Offender Disciplinary Report (ODR) for the offense of 205: Security Threat Group on August 27, 2015. [Ex. 1, 75:1-6; Ex. 3, 001924]. The ODR indicated the charge against him and a two-page description of the charge under the section titled "Observation." [Ex. 3, ODR, 001924]. Plaintiff was asked if he would sign the ticket but refused. [Ex. 1, 76:5-7]. Next, Plaintiff had the opportunity to call witnesses and present documentary evidence in his defense. Here, Plaintiff did not request any witnesses. [Ex. 1, 76:10-12]. About two days later, Plaintiff had a hearing on his ticket.

[Ex. 1, 76:16-22]. At the hearing, Plaintiff plead not guilty and provided a written affidavit as evidence on his behalf.  [Ex. 1, 81:25-82:1-2]. Pursuant to the *Wolff* protections, Plaintiff was given the opportunity to present evidence at the hearing in his defense. Specifically, Plaintiff was able to appear at the deposition and provide a written statement for consideration at the hearing. [Ex. 3, Bates 001922-001923; Ex. 1, 83:7-12]. The final *Wolff* protection is a written statement containing some evidence relied on and the reasons for the disciplinary action. Here, Plaintiff received a copy of the Adjustment Committee Final Summary Report, which contained the Basis for Decision on how the committee reached a decision on his discipline. [Ex. 3, Bates 001922-001923; Ex.1, 84:14-17].

Furthermore, this ODR was appealed by the Plaintiff`, who filed a grievance to the Administrative Review Board (ARB). [Ex. 3, Bates 001933; Ex. 1, 84:18-20]. The ARB decided to refer the ODR back to the Adjustment Committee to "address the reliability of the confidential sources and provide additional information to substantiate the Committee's finding Offender Gutierrez guilty of 205 charge," before making a final decision on Plaintiff's grievance. [Ex. 3, 001933]. The Adjustment Committee added additional language to the Basis for Decision. [Ex. 3, Bates 001931]. Ultimately, the ARB reviewed the amended Basis for Decision and denied Plaintiff's grievance, upholding the decision of the Adjustment Committee. [Ex.3, Bates 001935].

Here, the record reflects Plaintiff received all three *Wolff* due process protections. Overall, Plaintiff's ODR was reviewed not once but twice by the Adjustment Committee and the Basis for Decision was reviewed and ultimately upheld by the ARB. [*Id.*]. In the course of reviewing and re-reviewing this ODR, Plaintiff has received all, if not more than, the required protections outlined in *Wolff*.

To the extent Plaintiff challenges the names of the confidential informants being withheld, the US District Court(s) for the Southern District of Illinois extensively examined the safety and security concern presented by certain information being released by the IDOC in *Westefer, et al., v. Snyder, et al*., 00-162 and 00-708. Some of the decisions regarding discovery were appealed to the Seventh Circuit in *Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005) and *Westefer v. Snyder*, 472 F.Supp.2d 1034 (7th Cir. 2006). The Court denied plaintiff's appeal of an order denying plaintiff's discovery, looking to the security threats posed and favoring discretion towards "maintaining the strictest confidentiality of…intelligence information." *Westefer*, 00-162-GPM, Court Doc. 211, p. 5; *citing Dellwood Farms, Inc. v. Cargill, Inc*., 128 F.3d 1122, 1125 (7th Cir. 1997) (internal citation omitted)). U.S. District Judge Murphy noted "no prisoner should ever see or even possibly learn of the intelligence that has been painstakingly acquired by the prison officials to assist them in running the prisons." *Westefer*, 00-162, Court Doc. 211, p. 11. The Court's decision to prevent disclosure of such information was upheld by the Seventh Circuit. *Westefer*, 472 F.Supp.2d at 1034.

In *Thornburgh*, the Supreme Court acknowledge the expertise of prison officials, noting "the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, nothing the Court "has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) (*citing Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974)); *Mendoza v. Miller*, 779 F.2d 1287, 1293; *Bell v. Wolfish*, 411 U.S. 520, 547 (1979). To account for the balance between safety and security and procedural safeguards, as discussed in

Mendoza, a confidential informants reliability may be established one of several ways, specifically: 1) the oath of the investigating officer as to the truth of his report in addition to his appearance before the committee, 2) corroborating testimony, 3) a statement by the chairman of the committee that he personally knows the source of information and considered it reliable based on a past record, and/or 4) an in camera review of the material, including an assessment of credibility. *Mendoza*, 779 F.2d at 1293. There, the Court held the Due Process clause does not require a disciplinary committee to state the factual basis for its finding of reliability of a confidential informant; however, here, the record reflects both the investigating officer and the Adjustment Committee determined the information of the three confidential informants were reliable based on the corroborating testimony of each and the investigation done by Defendant Spiller. *Id.* [Ex. 3, Bates 001931 – 001932].

Therefore, for the above reasons, Defendants are entitled to summary judgment on Plaintiff's Due Process claim.

**III.    Defendants are entitled to summary judgment on Count II because Plaintiff was not subjected to unconstitutional conditions in violation of his Eighth Amendment rights.**

To prevail on a conditions of confinement claim, a plaintiff must prove two elements: (1) the deprivation alleged is "sufficiently serious" such that it resulted in the "denial of the minimal civilized measure of life's necessities;" and (2) officials knew of a substantial risk to the prisoner but failed to take reasonable steps to prevent the harm from occurring. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (citation omitted). As part of the first (objective) prong of this analysis, courts are asked to examine whether the conditions of confinement exceed the contemporary bounds of decency of a mature civilized society. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The conditions thus must result in either an "unquestioned and serious deprivation of basic human needs[,]" or deprive the

plaintiff of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Regarding the second (subjective) prong of the analysis, a plaintiff must show that officials were deliberately indifferent by being subjectively aware of the plaintiff's conditions or danger complained of, but consciously disregard it. *Rice v. Correctional Medical Services*, 675 F.3d 650, 655 (7th Cir. 2012). In order to proceed on an inhumane conditions of confinement claim, the burden is high for a plaintiff because "the Constitution does not mandate comfortable prisons," it merely forbids inhumane ones. *Rhodes*, 452 U.S. at 349.

A.    **Plaintiff's conditions in North II segregation were not sufficiently serious to trigger a constitutional violation.**

In the instant case, Plaintiff alleges there was blood, urine, feces, spit, bodily fluids, and black mold in the cells while housed in North II at Menard. [Ex.1, 94:1-19]. He also alleges there was sewage by the toilet and gnats in the cells. [Ex.1, 95:19-22]. In sum, Plaintiff essentially testified that the cells he were housed in were "disgusting." [Ex. 1, 94:1-5]. When he first arrived at North II, Plaintiff was placed in cell 453 on 4-Gallery for one day. [Ex. 5]. Plaintiff was then moved to 8-Gallery where he was housed in cell 825 from September 4, 2015 until October 2, 2015. He was placed in cell 850 for what appeared to be less than one day, and then was returned to cell 825 from October 2, 2015 until November 4, 2015. [Ex. 5]. Finally, Plaintiff was housed in cell 829 from November 4, 2015 until his transfer to Pontiac on November 20, 2015. [Ex. 5]. To the extent Plaintiff alleges unconstitutional conditions of confinement while he was housed in 4-Gallery (cell 453) and cell 850, his claims do not rise to the level of a constitutional violation because Plaintiff was housed in both cells for a total of less than two days. *See Teen v. Pannier*, No. 3:18-CV-992-MAB, 2020 U.S. Dist. LEXIS 221039, at *17 (S.D. Ill. Nov. 25, 2020) (Citing *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (allegations of a filthy, roach-infested cell

without toilet paper for five days and without soap, toothpaste, or a toothbrush for ten days did not rise to level of a constitutional violation).

General practice at Menard was to have inmate porters that provided some cleaning services. [Ex. 4, 46:7-17; Ex.1, 88:6-9]. Generally, inmate porters would clean the inside of the cells to get it ready for the next inmate to be placed in it. [Ex. 4, 46: 7-13]. However, inmates were responsible for cleaning the inside of their own cells. [Ex. 1, 87:25-88:1-5]. Plaintiff first testified that he was not given cleaning supplies while housed in North II segregation at Menard, but later testified he was given soap once a week. [Ex. 1, 88:19-25]. The remaining two cells Plaintiff was housed in were on 8-Gallery, cell 825 and 829. While housed in these cells, Plaintiff was given cleaning supplies once a week, for ten consecutive weeks while he was housed in these cells. [Ex. 6, North II cleaning logs].

To the extent Plaintiff alleges these weekly cleaning supplies were insufficient, a failure to furnish Plaintiff with cleaning supplies would not amount to a constitutional violation given the circumstances. *See Allen v. Hardy*, No 11 C 4147, 2012 WL 5363415, at *5 (N.D. Ill. Oct. 26, 2012) (lack of cleaning supplies did not result in constitutional violation because plaintiff was able to receive cleaning supplies without incident for the last year and was always able to clean cell with soap and personal towel); *Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at * 9 (N.D. Ill. Dec. 17, 2010) (lack of cleaning supplies did not result in constitutional violation because plaintiff could have used available water and clothing to clean his cell); and *Murithi v. Hardy*, No. 13 C 00599, 2016 WL 890695, at *7 (N.D. Ill. Mar. 9, 2016) (no constitutional violation because plaintiff was able to clean his cell twice a week). Plaintiff also complained of gnats, bugs, and rodents in North II. [Ex.1, 94:1-19; Doc. 62]. IDOC has a contract with a pest control company to provide services at Menard. These services are done on a semi-regular basis, about once a month.

[Ex. 4, 49:21-25-50:1-10].

Overall, Plaintiff's conditions do not rise to a deprivation of basic human need. While some aspects of Plaintiff's accommodations may not have met Plaintiff's sanitary preferences, the Eighth Amendment does not require that prisons be comfortable—it merely requires that prisons not be inhumane. *Farmer*, 511 U.S. at 832. Here, Plaintiff was provided cleaning supplies once a week and the facility took steps to reduce the likelihood of pests or rodents by contracting out with a vendor to provide pest services once a month. Plaintiff cannot meet his burden of establishing the conditions of his cell were unconstitutional, and Defendants are entitled to summary judgment.

**B.**     **Even if the Court were to determine the conditions of Plaintiff's confinement may rise to the level of a Constitutional violation, Defendants were not deliberately indifferent.**

Although Defendants argue that Plaintiff's cell conditions did not violate the Eighth Amendment, assuming, *arguendo*, that the conditions were significant enough to give rise to a constitutional claim, Plaintiff has still not carried his burden with regard to the second, subjective element of his claim. Plaintiff must also show that each Defendant acted with "deliberate indifference" to a substantial risk of serious harm. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010); *Farmer,* 511 U.S. at 834. Plaintiff must establish that each Defendant was aware of the conditions of his cells and refused to take any steps to address the risk the conditions presented. *See Horton v. Sheriff of Cook County,* 2012 WL 5838183, at *2 (N.D. Ill. Nov. 16, 2012). Prison officials who know of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer,* 511 U.S. at 844.

### i.    The Defendants were not aware of the alleged conditions and therefore lacked personal involvement.

Plaintiff's constitutional conditions of confinement claim is against Defendants Baldwin, Butler, Hutchinson, and Lashbrook. Defendant Butler was Warden of Menard from April 2014 through April 2016. [Doc. 73]. After her, Defendant Hutchinson was Warden from October through December of 2016. [Doc. 73]. Finally, Defendant Lashbrook was Warden from January 2017 until February 2019. [Doc. 73]. During all relevant times, Defendant Baldwin was the Acting Director of IDOC. [Doc. 73]. Plaintiff admits he never met the Defendants one-on-one and only wrote letters. [Ex. 1, 62:13-22, 64:17-23, 68:3-7, and 69:14-21]. He alleges he wrote about fifteen letters in total and sent them to the Defendants by placing them in the bars of his cell to be picked up by correctional staff. [Ex. 1, 65:8-9]. Plaintiff testified he kept copies of the letters and attached these copies to his complaint. [Ex. 1. 61:8-14]. However, the only letters attached to Plaintiff's complaint are regarding the status of his grievances. [Doc. 62]. According to the Warden's kite log, there is a record of only one correspondence received on September 28, 2015, in which Plaintiff complains about the grievance office not responding to his grievance. As indicated by the Warden's kite log, correspondences sent to the Warden's Office are logged and processed accordingly. Plaintiff has not provided any copies of his letters to the Defendants but if any correspondences were received by the Warden's Office, they would be logged and sent to the appropriate department for review, as was done on September 28, 2015, when Plaintiff sent a complaint regarding the grievance officer not processing his grievances. This grievance was forwarded along to the Grievance Office for a response. [*Id.*].

Defendants Lashbrook and Hutchinson are entitled to summary judgment because they were not present at Menard during the relevant time period Plaintiff was in North II segregation and therefore was not personally involved in any alleged constitutional violations regarding the

alleged conditions of North II. A supervisor cannot be held liable in a Section 1983 action unless the supervisor was personally involved in the wrongful conduct such that she caused or participated in the alleged constitutional violations. *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002). Plaintiff's allegations of unconstitutional conditions concern his placement in North II segregation in September 2015 until his transfer to Pontiac in November of 2015. [Doc. 62; Ex. 1, 111:2-7]. Defendant Lashbrook was not employed by Menard during this time period, and did not return to Menard until two years later in 2017. [Ex. 2, #3]. Defendant Hutchinson was also not employed by Menard during this time period, coming to Menard in October of 2016. [Doc. 73].

Furthermore, the fact that Plaintiff allegedly sent letters to the Defendants is insufficient to create a genuine issue of material fact. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (overruled on other grounds). Generally, writing a letter to an individual is not in itself enough for a person to be held liable for a constitutional violation. *See, e.g., Volk v Coler*, 638 F.Supp 1540, 1549 (C.D. Ill. July 8, 1986) aff'd, 845 F.2d 1422 (7th Cir. 1988) (letters are insufficient to create personal involvement.); *Wagner v McCann*, 2011 WL 3205352 at * 5 (N.D.Ill. July 27, 2011) (a single letter is "insufficient for personal liability to attach."). While there are some cases that suggest that writing letters may be sufficient, those cases involve facts where prison administrators received correspondence providing sufficient knowledge of a constitutional violation and failed to take any needed action to investigate or correct the violation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) ("In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference").

The Seventh Circuit has made it clear that the mere existence of a letter or other communication to prison officials would not be sufficient for personal liability to attach. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). The burden remained on the plaintiff to offer "some

record evidence that, because of the purported letters, the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id*. at 993-94.  In its review of the evidence at the summary judgment stage in *Vance*, the Seventh Circuit affirmed the entry of summary judgment for defendants where the plaintiff failed to meet her burden of establishing that the prison official-defendants were sufficiently informed of the situation to require their intervention. *Id*. at 994. Here, there is no evidence that the Defendants were made sufficiently aware of Plaintiff's concerns.

> ### ii.       Even if the Defendants are found to have notice of the alleged conditions, they took reasonable steps to address the concerns.

Assuming *arguendo*, the Court finds that the Defendants had notice of the alleged conditions in North II, they are still entitled to summary judgment because reasonable steps were taken to address the issues.

To the extent Plaintiff is alleging he sent multiple letters to the Defendants, there is no evidence in the record that Plaintiff sent letters aside from one inquiring as to the status of a grievance. [Doc. 62; Ex. 1. 61:8-14; Ex. 7, Warden Kite Log for 2015, Bates 000502]. To the extent Plaintiff uses the term "letters" interchangeably with his grievances, there is no evidence that the Defendants received or otherwise reviewed Plaintiff's grievance regarding the alleged unconstitutional conditions in North II. [Ex. 8].

In *Greeno v. Daley,* the plaintiff filed an Eighth Amendment action again multiple prison officials including a grievance officer, Charles Miller. 414 F.3d 645, 652 (7th Cir. 2005). On appeal, the plaintiff argued Eighth Amendment violations against Miller for failing to adequately address his formal inmate complaints regarding his medical concerns. [*Id.*]. The court discussed that because Miller reviewed plaintiff's complaints and passed them along to medical professionals

better suited to address these complaints, he was not deliberately indifferent to plaintiff's medical needs. [*Id.* at 656].

Although not a medical claim in the instant suit, the holding in *Greeno* can still be applied here. Here, in regards to Plaintiff's alleged letters, only one letter was seen on the Warden's kite logs, which was logged and sent to the appropriate department—the grievance office—to address the complaints. [Ex. 7, Bates 000502]. Similarly, to the extent Plaintiff attempts to proffer that his grievances were part of the multiple "letters" sent to the Defendants, Plaintiff's October 2015 grievance regarding the alleged conditions did not have grievance officer responses or Chief Administrative Officer (CAO) or Warden responses either.  In fact, this grievance was sent directly to the ARB for review. [Ex. 8]. Because of this, the Defendants, at Menard, would not have seen Plaintiff's grievances complaining of the alleged conditions. Nonetheless, Defendants and Menard Correctional Center took reasonable steps to address many of concerns Plaintiff complaints of. Offenders in North II, including the Plaintiff, were given weekly cleaning supplies to clean their cells, and the facility had a pest control professional that came regularly to deter any rodent or pests issues within the facility. [Ex. 4, 49:21-25-50:1-10]. The Defendants took reasonable steps to address Plaintiff's concerns and therefore the Defendants are entitled to summary judgment on Plaintiff's conditions of confinement claim.

## IV.    Defendants are entitled to qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982); *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152, (2018). To determine whether an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a

constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *See also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id*. at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id.* at 205.

Under the first prong of the analysis, the facts alleged here do not give rise to a constitutional violation. As analyzed in the preceding sections, Defendants cannot be liable for allegedly violating Plaintiff's Fourteenth Amendment rights because he was provided all *Wolff* protections and the Defendants cannot be liable for allegedly violating Eighth Amendment rights because they were not deliberately indifferent.

Under the second prong of the analysis, Defendants are entitled to qualified immunity because each acted as one would believe them to act in the situation and there is no clearly established law that a constitutional right was violated on the facts alleged. To hold Defendants liable under these facts would be a change in the law. Therefore, Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim of deliberate indifference to a serious mental health need.

## V.    Plaintiff is not entitled to compensatory damages.

Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury."* (emphasis added).

Here, Plaintiff cannot provide any evidence showing he suffered any physical injury as a result of Defendants' conduct. Plaintiff alleges that due to his two and a half months stay in North II segregation at Menard, he suffered from worsening back problems and heartburn, weight loss, and on one occasion, he hit his head and knee on the bunk beds. [Ex. 1, 106:1-4, 107: 2-5, 10-17]. However, Plaintiff has a history of heartburn and back pain and there is no evidence in his medical records that Plaintiff was seen for alleged injuries to his head and knee. Furthermore, his medical records show his weight was 229 on August 1, 2015 and 222 in October of 2015. [Ex. 9, Relevant Medical Records, Bates stamped 001062-001072]. Furthermore, he provides no evidence that any of these alleges injuries are due to any of the Defendants' conduct, therefore, the Defendants are entitled to summary judgment on Plaintiff's claim for compensatory damages.

## VI.    Plaintiff is not entitled to punitive damages.

Even if the Court finds there is a question of material fact, which precludes judgment in favor of Defendants, the Defendants are still entitled to summary judgment on Plaintiff's claim for punitive damages because Plaintiff cannot provide any evidence showing Defendants took any action with evil motive or intent or reckless disregard of Plaintiff's federally protected rights. *See Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003) ("Punitive damages are awarded to punish and deter reprehensible conduct" and "may be awarded under § 1983 upon a showing of evil motive or intent, or reckless or callous indifference to the federally protected rights of others."). Because the record is completely devoid of any evidence supporting a claim that Defendants acted with evil motive, Defendants are entitled to summary judgment on Plaintiff's claims for punitive damages.

<u>**CONCLUSION**</u>

Plaintiff filed a complaint pursuant to 42 U.S.C. §1983 alleging Fourteenth Amendment and Eighth Amendment constitutional violation while incarcerated at Menard in 2015. Defendants

seek summary judgment on Plaintiff's Fourteenth Amendment due process claim because Plaintiff was afforded all protections under *Wolff*. Defendants also seek summary judgment on Plaintiff's Eighth Amendment conditions of confinement claim because Plaintiff's conditions while housed in North II segregation were not sufficiently serious to raise to a constitutional violation; however, assuming arguendo, the Court were to determine the conditions rose to such a level, the record reflects a lack of personal involvement by Defendants and that they were not deliberately indifferent. For the reasons stated above, the Defendants are entitled to summary judgment.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment and enter judgment in their favor and against the Plaintiff.

Respectfully submitted,

JOHN BALDWIN, KENT BROOKMAN, KIMBERLY BUTLER JASON HART, JEFFREY HUTCHINSON, JACQUELINE LASHBROOK, and WILLIAM SPILLER,

Defendants,

KWAME RAOUL, Illinois Attorney General,

Attorney for Defendants,

Hinal A. Patel #6330260
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 557-7081 Phone
(217) 782-8767 Fax
E-mail: Hinal.Patel@ilag.gov

By: s/Hinal A. Patel
    Hinal A. Patel
    Assistant Attorney General

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISON

ARMANDO GUTIERREZ #K57497,    )
    )
    Plaintiff,    )
    )
v.    )
    )    Case No. 18-1478-SMY
JOHN BALDWIN, KENT BROOKMAN,    )
KIMBERLY BUTLER JASON HART,    )
JEFFREY HUTCHINSON, JACQUELINE    )
LASHBROOK, and WILLIAM SPILLER,    )
    )
    Defendants.    )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2021, the foregoing document, ***Memorandum of Law in Support of Defendants' Motion for Summary Judgment***, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Mueller    rmueller@thompsoncoburn.com
Benjamin I. Middleton    bmiddleton@thompsoncoburn.com
Heather F. Counts    hcounts@thompsoncoburn.com

and I hereby certify that on the same date, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant:

NONE

Respectfully submitted,

  s/ Hinal A. Patel
Hinal Patel, #6330260
Assistant Attorney General
Attorney for Defendants
Office of the Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 557-0261 Phone
(217) 782-8767 Fax
Email:  Hinal.Patel@ilag.gov