IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARMANDO GUTIERREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-1478-SMY |
| | ) | |
| JOHN BALDWIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Armando Gutierrez, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). More specifically, Plaintiff alleges defendants conspired to violate his rights in issuing a false disciplinary ticket related to gang activity. Plaintiff is proceeding on his First Amended Complaint (Doc. 62) that sets forth the following claims:

Count One:  Fourteenth Amendment claim against Baldwin, Lashbrook, Spiller, Brookman, Hart, Butler, and Hutchinson for depriving Plaintiff of a protected liberty interest without due process of law by punishing him with one year of segregation, C-grade status, commissary restrictions, and six months of visitation restrictions for a false disciplinary ticket issued August 27, 2015.

Count Two:  Eighth Amendment claim against Baldwin, Lashbrook, Butler, and Hutchinson for subjecting Plaintiff to inhumane conditions of confinement in segregation at Menard.

On November 8, 2021, Plaintiff filed a motion to compel that is now before the Court (Doc. 90). For the reasons set forth below, the motion is **GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART**.

In his motion to compel, Plaintiff seeks three categories of documents: (1) work orders submitted for maintenance and repairs in the North II cellhouse of Menard from January 1, 2015 to December 1, 2015; (2) Unit Shift Reports for North II from January to December, 2015; and (3) a less-redacted version of Plaintiff's investigative file produced as IDOC000961-1055.

First, with regard to the work orders and Unit Shift Reports, said documents were requested in Plaintiff's Second Request for Production. Requests one through four are relevant to the dispute, and they are as follows:

> Request No. 1: All documents and communications memorializing, reflecting, or relating to the physical condition of inmate housing in North II at Menard Correctional Facility from January 1, 2015 to December 31, 2015, including but not limited to any documents showing the presence of the following in North II cells: mold, feces, urine, blood, rodents and/or insects.
>
> Request No. 2: All documents and communications memorializing, reflecting, or relating to the physical condition of living units N2:04:53, N2:08:50, N2:08:25, and N2:08:29 at Menard Correctional Facility from September 1, 2015 to November 31, 2015, including but not limited to any documents showing the presence of the following in the units: mold, feces, blood, rodents and/or insects.
>
> Request No. 3: All documents and communications memorializing, reflecting, or relating to the distribution of cleaning supplies in North II at Menard Correctional Facility from January 1, 2015 to December 1, 2015, including but not limited to North II Shift Reports.
>
> Request No. 4: All documents and communications memorializing, reflecting, or relating to the distribution of cleaning supplies to living units N2:04:53, N2:08:50, N2:08:25, and N2:08:29 at Menard Correctional Facility from September 1, 2015 to November 31, 2015.

Defendants objected to requests numbers 1 and 3. In response to request No. 2, Defendants referred Plaintiff to North II cleaning logs, the Menard Safety and Sanitation reports from 2015, ESI emails, shakedown slips for the cells listed in requests numbers 2 and 4, and shift reports from September 1, 2015 through November 30, 2015. In response to request No. 4, Defendants referred Plaintiff to the North II cleaning logs.

Plaintiff asserts work orders for the North II cellhouse are relevant as the conditions that form the basis of Plaintiff's complaint would not necessarily have been limited solely to Plaintiff's cell.  Plaintiff further asserts that if work orders were submitted for the repair of inadequate facilities in other cells or in common areas in the North II cellhouse, it would make it more likely that Plaintiff's cell also suffered from inadequate and unlawful conditions.  According to Plaintiff, work orders are also relevant as evidence of notice to Defendants of inadequate conditions.  With regard to shift reports for January through December 2015, Plaintiff asserts these reports contain information about the distribution of cleaning supplies in North II, and the reports will either prove or disprove Defendants' claim that cleaning supplies are distributed on a standard weekly schedule.  Plaintiff further contends the shift reports are relevant as to whether Defendants had knowledge that cleaning supplies were being withheld in North II.

The scope of discovery is set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure. The current language of the Rule provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Supreme Court has cautioned that the requirement under Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where necessary.  *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003).  However, "relevancy" for discovery purposes is construed broadly to

encompass matters that bear on, or reasonably could lead to other matters that could bear on, any issue in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "Relevance is not inherent in any item of evidence, but exists only as a relation between an item of evidence and the matter properly provable in the case." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 722 (N.D. Ill. Jan. 6, 2014) (citation omitted).

In this instance, Defendants' application of the term "relevant" is too narrow and not in compliance with Rule 26. Information need not only be relevant if it can directly prove or disprove a claim; rather, it must "bear on" any issue in the case. Here, work orders and shift reports concerning the entirety of the North II cellhouse clearly relate to Plaintiff's unconstitutional conditions of confinement claim and may go to the issue of notice to Defendants of the relevant matters concerning distribution of cleaning supplies and complaints of cell conditions. The Court agrees with Plaintiff that relevancy in this instance is not so narrow as to be limited solely to the cells in which Plaintiff resided as the complaints at issue could, and likely would, permeate the cellhouse. The Court, however, is not convinced that relevancy here pre-dates Plaintiff's placement in the North II cellhouse eight months. Indeed, beyond the immediate period before and after Plaintiff's placement in the North II cellhouse (which appears to have been from September 3, 2015 through November 20, 2015), the conditions in the cellhouse become increasingly irrelevant. Based on the foregoing, the Court **GRANTS IN PART** Plaintiff's request to compel the documents described above. Defendants shall produce all work orders and Shift Reports for the North II cellblock at Menard from August 1, 2015 through December 1, 2015 by **June 15, 2022**.

Plaintiff also asks that Defendants be compelled to provide a version of Plaintiff's

investigative file with redactions only of identifying information for confidential sources. In response to Plaintiff's motion, Defendants complain that Plaintiff failed to indicate which request said investigative report is responsive to and, as such, said request should be stricken or denied. Defendants also contend they should not be compelled to provide a less-redacted investigative file as it contains information critical to the safety and security of the institution and specific individuals. First, with regard to Defendants' procedural complaint, it is apparent the investigative file is responsive to various requests for production provided by Plaintiff, and the Court finds the motion was appropriately filed. The Court also finds an unredacted version must be provided to the Court to discern whether there is further relevant information that must be produced. Thus, Defendants are **ORDERED** to provide the Court with an unredacted copy of the investigative file at Document Number 90-2 for an in camera review. Said copy shall be sent to RJDpd@ilsd.uscourts.gov by **June 1, 2022**. The Court will then make a determination whether there is relevant information contained in the same that must be produced. Accordingly, Plaintiff's request to order Defendants to produce a version of Plaintiff's investigative file with redactions only of identifying information for confidential sources is **TAKEN UNDER ADVISEMENT**.

**IT IS SO ORDERED.**

**DATED: May 25, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**