IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARMANDO GUTIERREZ,<br><br>           **Plaintiff,**<br><br>v.<br><br>JOHN BALDWIN, JACQUELINE LASHBROOK, WILLIAM A. SPILLER, KENT BROOKMAN, JASON HART, KIMBERLY S. BUTLER, AND JEFFREY A. HUTCHINSON,<br><br>           **Defendants.** | Case No. 3:18-cv-01478-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Armando Gutierrez filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center. He is proceeding on a Fourteenth Amendment due process claim against Defendants William A. Spiller, Jason Hart, Kent Brookman, Jacqueline Lashbrook, John Baldwin, Kimberly S. Butler, and Jeffrey A. Hutchinson (Count 1) and an Eighth Amendment unconstitutional conditions of confinement claim against Defendants Jacqueline Lashbrook, John Baldwin, Kimberly S. Butler, and Jeffrey A. Hutchinson (Count 2).  (Docs. 8, 61, 62).

This matter is now before the Court on Defendants' Motion for Summary Judgment (Doc. 92), which Plaintiff opposes (Doc. 100). For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## THE PARTIES

Gutierrez has been incarcerated within the Illinois Department of Corrections since 2002; his allegations stem from his incarceration at Menard Correctional Center in 2015. (Doc. 93-1, p.

3 at 12:1-2; Doc. 62). John Baldwin was the Acting Director of the Illinois Department of Corrections during the relevant time. (Doc. 73). Kent Brookman was the Chairman of the Adjustment Committee at Menard during the relevant time. (*Id*.). Kimberly Butler was the Warden at Menard from April 2014 until April 2016. (*Id*.). Jason Hart was a member of the Adjustment Committee at Menard during the relevant time. (*Id*.). Jeffrey Hutchinson was the Warden at Menard from October 3, 2016 until December 30, 2016. (*Id.*). Jacqueline Lashbrook was the Warden at Menard from January 2017 until February 1, 2019. (Doc. 93-2, p. 2). William Spiller was a Lieutenant at Menard during the relevant time. (Doc. 73).

## FACTS[1]

### Count 1 – Fourteenth Amendment procedural due process claim

Gutierrez received an offender disciplinary report ("ODR") for the offense of "205: Security Threat Group" on August 27, 2015, (Doc. 93-3, pp. 3-4), which states in relevant part:

> This disciplinary report is being issued to offender Armando GUTIERREZ K57497 upon the conclusion of an internal investigation that was concluded on today's date. This investigation was initiated to identify any offender associated with the Latin Folk STG who was acting in a leadership position for the Latin Folk STG at Menard Correctional Center. As a result of the investigation, it was established the Latin Folks currently had an Institutional Coordinator, an Assistant Institutional Coordinator, and an Institution Chief of Security, in addition it was also discovered the Latin Folks had appointed an "Overseer" for the East and West Cell house: the positions were identified utilizing multiple confidential sources. Offender Gutierrez K57497 was identified as the East and West cell house Overseer for the Latin Folks by three confidential source[s] (names and numbers of the sources are being withheld for the safety and security of the institution, but deemed reliable due to the consistency of their statements). Through the investigation, it was established offender Gutierrez is the Overseer, as the Overseer he is a direct link to the Latin Folk Institutional Leadership Staff and the Latin Folk East and West cell house Leadership Staff. The Latin Folk East and West cell house Unit Coordinators would report directly to offender Gutierrez due to his position as the Overseer. Offender Gutierrez would then report directly to the Institutional Leadership Staff. The Overseer position was created to limit the amount of offender who would know the identity of the Latin Folk Institutional Leadership Staff, in accordance with Latin Folk "Don't Ask, Don't Tell" Policy. The information obtained from confidential

---
[1] The facts are undisputed unless otherwise noted.

sources that offender Gutierrez has been identified as the East and West cell house Overseer for the Latin Folk STG has been confirmed by Intel staff based on consistent and reliable statements from sources as well as information/evidence obtained through investigation conducted by IDOC staff. Based on the information obtained during the investigation, offender GUTIERREZ K57497 is being issued a disciplinary report for 205: Security Threat Group Activity. He was identified by his state ID card and OTS. End of Report.

The ODR was written by Internal Affairs Officer William Spiller. (*Id.*). When Gutierrez was served with a copy of the ODR, he refused to sign it and did not request any witnesses for the hearing. (Doc. 93-3, p. 3; Doc. 93-1, p. 19 at 75:17-76:12).

The Adjustment Committee hearing on the ODR was conducted by Kent Brookman and Jason Hart on September 3, 2015. (Doc. 93-3, pp.1-2). According to Gutierrez, upon arriving at the hearing, Brookman verbally accosted him, stating that he was sick of "all you f****** gangbangers, G's, Vice Lords, Latin Folks . . . ." (Doc. 93-1, p. 13 at 49:13-50:4, p. 20 at 80:20-81-6). Brookman then told Gutierrez that he was getting a year in segregation. (*Id.*). When Gutierrez attempted to present his written statement, Brookman stated, "What's this? For your lawsuit? You're getting a year across the board anyway. Get out of here." (*Id.*, p. 21 at 82:9-17). After he handed his written statement to Brookman, he was escorted to segregation. (*Id.*, p. 21 at 81:25-82:23). He received notice of a guilty finding approximately 20-30 minutes after the hearing. (*Id.*, p. 30 at 119:17-120:11).

Brookman and Hart found Gutierrez guilty based solely on the summary in the ODR. (Doc. 100-2, p. 14 at 53:17-56:9, p. 15 at 59:24-61:1; Doc. 100-3, p. 12 at 47:10-48:24). The "Basis for Decision" in the Adjustment Committee's Final Summary Report was taken verbatim from the ODR written by Spiller. (Doc. 100, p. 12 at ¶ 14; Doc. 93-3, pp. 3-4). Brookman and Hart testified that it was standard procedure for the Adjustment Committee to copy language from the relevant ODRs for the "Basis for Decision" in final summary reports. (Doc. 100-2, p. 16 at

61:20-62:1; Doc. 100-3, pp. 12-13 at 48:20-49:5). The Final Summary Report and the Adjustment Committee's disciplinary recommendation for 1-year C-grade status, 1-year segregation, 1-year commissary restriction, and 6-months contact visit restrictions were approved by a designee for then Warden Kimberly Butler. (Doc. 93-3, pp. 1-2).

When asked whether the Adjustment Committee's policy was to copy disciplinary reports verbatim into the final summary reports, Butler testified: "I think they did that often. Should they have done it? Probably not. They should have used their own words. Pretty certain they did it to cut corners I think." (*Id.*, p. 30 at 120:2-20). Butler further testified that the Final Summary Report issued to Gutierrez does not indicate that the Adjustment Committee conducted any independent investigation of the charges against Gutierrez or evaluated any evidence other than the ODR. (*Id.*, pp. 30-31 at 120:21-121:12).

Gutierrez sent an Affidavit dated September 1, 2015, and a grievance dated September 3, 2015, to the Administrative Review Board ("ARB") regarding the disciplinary action.[2] (Doc. 93-9, pp. 3-7). The documents were received by the ARB on September 8, 2015 and returned by ARB member Debbie Knauer on September 30, 2015, with direction for Gutierrez to provide the counselor, grievance officer, and warden's responses. (*Id.*, p. 2)

Additionally, Gutierrez appealed the Adjustment Committee's decision to the ARB via a grievance dated September 11, 2015, which was received by the ARB on December 17, 2015. (Doc. 93-3, p. 12; Doc. 93-8, pp. 40-53). The ARB remanded the ODR back to the Adjustment Committee on May 11, 2016 "to address the reliability of the confidential sources and provide additional information to substantiate the Committee's finding." (Doc. 93-3, p. 12). The ARB's

---

[2] Defendants attached 221 pages of grievance documents that cover a time span of 2006-2018 to their memorandum. (Docs. 93-8, 93-9). The vast majority of the documents have no relevance to the claims in this lawsuit. Because the inclusion of irrelevant documents causes a waste of judicial resources, Counsel should refrain from this practice in the future.

decision was signed by a designee for then IDOC Director John Baldwin.  *Id.*

On remand from the ARB, Spiller was asked to provide additional information to the Adjustment Committee to confirm the veracity of the confidential sources, but he did not do so. (Doc. 100-1, p. 27 at 108:4-109:1).   Instead, the Adjustment Committee added the following two paragraphs to the end of the "Basis for Decision" in the Final Summary Report:

> Gutierrez K57497 was identified as Latin Folks Overseer for the East and West cell house by multiple confidential sources. These three sources whose names and numbers being withheld for the safety and security of the institution but deemed reliable due the consistency of their statements.
>
> 205 charge found inmate guilty by the committee of engaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs. Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an organization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

(Doc. 93-3, pp. 10-11).   The amended Final Summary Report was signed by a designee for then Warden Jeffrey A. Hutchinson on November 17, 2016.   (*Id.*)

The ARB affirmed the decision of the Adjustment Committee and denied Gutierrez's grievance on August 24, 2017.  (Doc. 93-3, p. 14).   The ARB's decision was signed by board member Debbie Knauer and a designee on behalf of Baldwin.   (*Id.*).

### Count 2 – Eighth Amendment conditions of confinement claim

Gutierrez served a portion of his one-year term of segregation in Menard North II segregation from September 3, 2015, until November 20, 2015.[3]  (Doc. 93-1, p. 28 at 111:2-7; Doc. 93-5, pp. 1-3).   While housed in North II, he was assigned to cell 453 on 4-Gallery for one day, cell 850 on 8-Gallery for less than one day, cell 825 from September 4 to October 2, 2015

---

[3] Gutierrez was transferred to Pontiac Correctional Center and was released from disciplinary segregation on August 22, 2016.  (Doc. 93-5, p. 1).

and from October 2 to November 4, 2015, and cell 829 from November 4-20, 2015. (Doc. 93-5). During the initial portion of his stay in segregation, he was denied access to his personal property for 1-2 weeks. (Doc. 93-1, p. 22 at 87:16-24).

Gutierrez testified that there was blood, urine, feces, spit, other bodily fluids, black mold, sewage, and gnats in the North II cells. (Doc. 93-1, p. 24 at 94:1-96:3). He further testified that despite repeated requests, cleaning supplies were not provided weekly while he was incarcerated in disciplinary segregation in North II (*Id.*, pp. 23-24 at 89:9-90:23, 96:9-24); after repeatedly requesting cleaning supplies, he received a single cup of soap from a porter (*Id.*, p. 23 at 90:17-91:16); and he was not provided with a rag or other cleaning supplies, even after requesting them, so he could not clean the sewage and mold in his cell. (*Id.*, p. 23 at 91:5-22, p. 25 at 99:8-16).

According to Defendants, the North 2 cleaning log reflects that Gutierrez received cleaning supplies weekly while he was housed in North II (Doc. 93-6), and porters pass out soap for cleaning once a week in North II because the prisoners are responsible for keeping their cells clean. (Doc. 93-1, pp. 22-23 at 87:25-89:8).

Butler testified that the soap passed out to inmates for cleaning cells would be insufficient to clean black mold or urine and feces on cell walls. (Doc. 93-4, pp. 12-13 at 48:21-49:10). These larger cleanliness issues were not the responsibility of inmates. (*Id.*).

Gutierrez had a cellmate in each of his cells in disciplinary segregation in North II except cell 453. (Doc. 93-1, p. 22 at 86:17-87:4). According to Gutierrez, the segregation cells in in North II were so small that they did not provide sufficient space for an inmate to sit on the bottom bunk of a double-bunked cell. (*Id.*, p. 27 at 105:24-106:20). Butler testified that the North II cells are too small for two adults (Doc. 93-4, pp. 16-17 at 64:22-65:16) and do not provide sufficient space for inmates to have a minimum standard of life. (*Id.*, p. 17 at 65:12-15). She

also testified that the cells in administrative detention are bigger and could accommodate two people. (*Id.* at 65:1-5).

Gutierrez testified that his back pain was exacerbated by an inability to sit between the top and bottom bunks in his double-bunked cells, and he suffered head and knee injuries due to the close quarters. (Doc. 93-1, p. 27 at 106:17-107:21, p. 29 at 113:1-116:24). He also testified that the double-bunked cells did not provide sufficient space to exercise or move about freely, which also aggravated his back pain and heartburn.

Gutierrez testified that he suffered from constant bug bites in his cell in disciplinary segregation. (*Id.*, p. 31 at 120:12-121:23). According to Butler, IDOC contracted with a pest control company that came approximately once a month unless called in more frequently to address pest and rodent issues. (Doc. 93-4, p. 13 at 49:21-25-50:1-10). Prisoners could choose not to have their cells sprayed. (*Id.*). In 2015, there was an issue in segregation with mice getting into personal property boxes and eating food. (*Id.* at 50:11-17).

Butler performed inspections of North II approximately once a week from September to December 2015. (*Id.*, p. 15 at 58:14-59:6). During these inspections, she would speak with inmates, check surroundings "looking for cockroaches or anything like that," and look into cells. (*Id.* at 59:7-60:7). If she believed that Menard was failing to meet minimum standards of cleanliness and sanitation, she could have ordered a deep clean of the facility, replaced sanitation personnel, or condemned a cell until the issue was remediated. (*Id.*, pp. 14-15 at 56:2-57:17).

Gutierrez did not have any face-to-face communications with Butler or Baldwin regarding the conditions at Menard. (Doc. 93-1, p. 16 at 64:17-23; p. 18 at 69:14-21). He testified that he wrote at least 15 letters to Butler and Baldwin complaining of blood, feces, and urine on his walls, a broken toilet, black mold in the cell and around the toilet, and pests in the cell. (Doc. 93-1, p.

17 at 65:13-67:16; p. 18 at 69:17-70:7). He never received a response to those letters. (*Id.*). According to Defendants, the warden's kite logs show the only correspondence received from Gutierrez was on September 28, 2015, in which he complained about the grievance office not responding to his grievance. (Doc. 93-7, p. 29).[4]

Gutierrez wrote an emergency grievance on September 5, 2015 detailing the living conditions in North II. He complained about the black mold, blood stains, feces, and urine on the walls, floor, and toilet of his cell; mice, roaches, gnats, black flies, and ants infesting the cell; and a torn mattress stained from years of soaking up bodily fluids. (Doc. 100-8, p. 1 at ¶ 3; Doc. 100-9). He never received a response to the grievance. (Doc. 100-8, p. 1 at ¶ 4). He wrote letters to Butler on September 13 and 14, 2015, requesting that she confirm receipt of his grievance, but never received a response to those letters. (*Id.*, p. 2 at ¶¶ 5, 8).

Butler was aware of allegations that grievances were lost and destroyed at Menard in 2015. (Doc. 93-4, p. 8 at 31:19-32:8). During her time as assistant warden at Menard, lost and destroyed grievances were "a really big issue." (*Id.*). Butler's policy was to personally review all emergency grievances during her time as warden at Menard. (Doc. 93-4, pp. 5-6 at 20:20-21:5).

Gutierrez's cellmate in North II cell 825, Jay Parker, observed Gutierrez submit several grievances regarding living conditions in North II segregation and the inadequate size of cells. (Doc. 100-10). Parker also observed Gutierrez write letters to Butler about the status of his grievances. (*Id.*).

According to the grievance records, Gutierrez submitted only one grievance – dated October 12, 2015 – regarding the alleged unconstitutional conditions in North II while he was still housed at Menard. (Doc. 93-8, pp. 1, 108-111). He complained about being double-celled in a

---

[4] The Warden's Kite Log in Exhibit 7 is extensively redacted, with only the single September 28, 2015 entry unredacted.

small cell (4 ½ x 10 feet), poor cell ventilation, and overpopulation at Menard. (Doc. 93-8, pp. 110-111; Doc. 100-8, p. 2 at ¶ 9). He also complained that he was unable to exercise in the cell, could barely stand comfortably, was forced to sit or lay most of the day, and had developed bed sores and depression. (*Id.*). The grievance was received by the ARB on October 28, 2015. (Doc. 93-8, pp. 108-111). In an Affidavit submitted with the grievance, Gutierrez states he attempted to file the grievance with a Menard counselor but the counselor refused to accept it. (*Id.*, p. 109). At the bottom of the grievance document, he states copies of the grievance are being sent to the grievance office, the warden, and IDOC Director Baldwin. (*Id.*, p. 111). The grievance records do not reflect that Butler or Baldwin received or otherwise reviewed the grievance. (*Id.*, pp. 1-112). The ARB denied the grievance, finding that it had no merit because "[s]egregation standards are in accordance with DR 504.620. (Doc. 93-8, p. 108)." The denial was signed by a designee for Baldwin. (*Id.*)

## **DISCUSSION**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, the Court must view the evidence "in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences, and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). It may not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting

evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). Instead,

### Count 1 – Fourteenth Amendment claim

Although incarceration necessarily makes many rights and privileges of ordinary citizens unavailable to inmates, "a prisoner is not wholly stripped of constitutional protections." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). They may not be deprived of life, liberty, or property without due process of law. *Id*. at 556.

When a prisoner raises a Fourteenth Amendment procedural due process claim related to disciplinary proceedings, the Court undertakes a two-part analysis. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). The Court first evaluates whether the prisoner was deprived of a protected liberty interest. If so, it then evaluates whether the process he was afforded was constitutionally deficient. *Id.*

An inmate's liberty interest in avoiding segregation is limited. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). A liberty interest exists in that context only if prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation gives rise to a liberty interest, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion*, 559 F.3d at 697 (emphasis in original).

Here, Defendants do not dispute whether Plaintiff was deprived of a protected liberty interest. (Doc. 93, p. 10). Rather, the question is whether the procedures followed during the Adjustment Committee hearing were constitutionally deficient.

"Due process requires that prisoners in disciplinary proceedings be given: (1) advance (at

least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decisionmaker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). The written statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* at 941. However, it is constitutionally insufficient to merely incorporate the investigating officer's report. *Redding v. Fairman*, 717 F.2d 1105, 1114-15 (7th Cir. 1983). Additionally, due process requires that the disciplinary decision must be supported by at least "some evidence." *Id.*

When confidential information is the basis for a prison disciplinary decision, there must be some indication of the reliability of the confidential sources. *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985). The reliability of confidential sources must be established by:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that, he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Id.* (internal citations and quotation marks omitted). While due process requires a prison disciplinary committee to state the factual basis for its finding as to the reliability of a confidential informant, it may make that statement in a confidential report that is reviewed *in camera* by the court rather than part of the public record. *Id.* at 1295.

Neither the investigator (Spiller) nor any of the confidential sources testified, and the ODR was not submitted under oath. The information from the confidential sources summarized in the ODR was the only evidence before the Adjustment Committee when it made its decisions; there

was no corroborating testimony. The reliability of the confidential sources was not established under any of the other required methods. The ARB recognized this deficiency when it remanded for the Adjustment Committee "to address the reliability of the confidential sources and provide additional information to substantiate the Committee's finding." (Doc. 93-3, p. 12). Even then, Spiller did not provide any additional information to confirm the veracity of the confidential sources. (Doc. 100-1, p. 27 at 108:4-109:1). Moreover, the Adjustment Committee's adoption of Spiller's statement in the ODR, instead of making its own statement of the evidence relied on and the reasons for the disciplinary action, does not satisfy due process requirements. *See*, *Hayes v. Walker*, 555 F.2d 625 (7th Cir. 1977).

To satisfy due process, a hearing "must be a real one, not a sham or a pretense." *Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999). "[E]ven if the procedures are legitimate, it is impermissible to employ those procedures vindictively or maliciously so as to deny a particular individual due process." *Orozco v. Butler*, 766 F. App'x 365, 369 (7th Cir. 2019) (quoting *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982)). A hearing "in which the punishment has been predetermined raises doubt that the hearing is, in fact, fair and impartial." *Id.* The alleged statements made by Brookman could reflect bias and preclude a finding that Gutierrez received a hearing before an impartial decisionmaker. *See, Bridges v. Davis*, 106 F. App'x 508, 510 (7th Cir. 2004).

Based on the foregoing, material issues of fact exist with respect to whether the disciplinary proceeding complied with due process requirements. Therefore, Adjustment Committee members Brookman and Hart are not entitled to summary judgment. Likewise, Spiller is not entitled to summary judgment on Gutierrez's claim against him based on the issuance of a false or unjustified ODR and his failure to confirm the veracity of the confidential sources.

Butler and Baldwin did not participate in the disciplinary hearing and cannot be vicariously liable for subordinate employees' actions. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir.1996). However, as supervisory officials, they may be personally liable if they knew of and facilitated, approved, condoned, or turned a blind eye to an ongoing constitutional violation that they had the ability to remedy. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000).

There is no evidence in the record that Butler or Baldwin knew of due process violations related to the disciplinary proceeding and facilitated, approved, condoned, or turned a blind eye to the conduct. The Final Summary Report and the grievance related to the disciplinary proceedings were signed by designees for Butler and Baldwin, and there is no evidence in the record of any direct communications that would have alerted them to an ongoing constitutional violation. Thus, Butler and Baldwin are entitled to summary judgment on Count 1.

Finally, Lashbrook and Hutchinson were not wardens at Menard at the time of the disciplinary proceedings. Lashbrook did not become warden until 2017 and there is no basis for a claim against her. Hutchinson was not a warden at Menard until October 2016. Hutchinson's only connection is that a designee signed the amended Final Summary Report on his behalf on November 17, 2016. But there is no evidence that he knew of due process violations in the disciplinary proceeding and facilitated, approved, condoned, or turned a blind eye to the conduct. Accordingly, Lashbrook and Hutchinson are entitled to summary judgment on Count 1.

**Count 2 – Eighth Amendment claim**

The Constitution does not guarantee inmates comfortable prisons, but does mandate humane conditions. *Thomas v. Blackard*, 2 F.4th 716, 729 (7th Cir. 2021) (internal citations and quotations omitted). "By prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and ensure that

inmates receive adequate food, clothing, shelter, and medical care." *Id.* Prison officials who fail to uphold these duties violate the Eighth Amendment "upon exhibiting deliberate indifference to a substantial risk of serious harm to an inmate." *Id.*

An inmate who challenges his conditions of confinement "must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Id.* (internal alterations omitted). "Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.*

Prison officials may violate the Eighth Amendment by depriving prisoners cleaning supplies and subjecting them to unsanitary conditions. *See, Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Gutierrez's description of the segregation cells in which he was housed – containing blood, urine, feces, black mold, and sewage seeping around the toilet – and his testimony that he was denied cleaning supplies creates a genuine issue of material fact regarding whether he was subjected to an excessive risk to his health. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007).

Additionally, prisoners can be harmed by placement in cells that are unconstitutionally small. *See*, *Randle v. Baldwin*, No. 3:16-CV-1191-NJR, 2020 WL 1550638, at *5 (S.D. Ill. Apr. 1, 2020). In fact, judges in this district have previously found that the North II cells at Menard are not of constitutionally adequate size to house two inmates. *Id.*; *see also Trainauskas v. Fralicker*, No. 18-CV-00193-SPM, 2021 WL 1171674, at *10 (S.D. Ill. Mar. 29, 2021) ("When addressing similar claims regarding conditions of confinement and double celling of inmates in the cells of North 1 and North 2 Cell Houses at Menard, the courts in this district have repeatedly

held that 'there is a clear argument that conditions were not constitutional.'") (collecting cases).

With respect to the subjective element, "[d]eliberate indifference entails something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (internal citations and quotation marks omitted). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference may be shown by establishing that the defendants were aware of the risk but ignored it or failed to take reasonable measures to abate it. *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014).

Butler testified that she toured North II weekly in 2015, including the months Gutierrez was incarcerated there. Her tours included speaking with inmates, checking surroundings, and looking into cells. Given the severity and prevalence of the conditions testified to by Gutierrez, a reasonable jury could conclude that Butler would necessarily have been aware of the conditions. The conflict between Butler and Gutierrez's testimony in this regard presents a factual dispute and requires a credibility determination not to be made on summary judgment. Further, Gutierrez testified that he wrote as many as fifteen letters to Butler and Baldwin advising them of the conditions in segregation. Whether they received such letters is also a question of fact to be resolved by the jury.

Finally, the undersigned joins other judges in this district in concluding, as a matter of law, that the North II cells at Menard are not of adequate size to constitutionally house two inmates. Whether Butler and Baldwin knew of and disregarded an excessive risk of harm to Gutierrez as a result of this condition are material issues of fact precluding summary judgment.

**Qualified Immunity**

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In analyzing this issue, the Court must determine: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232.

The Court has concluded that a genuine issue of material fact exists regarding whether Brookman, Hart, and Spiller violated Gutierrez's Fourteenth Amendment due process rights related to the disciplinary proceedings. At the time the disciplinary proceedings took place, case law existed clearly establishing the *Wolff* requirements, the insufficiency of simply adopting a disciplinary report into a final summary report, and the requirements for establishing the reliability of confidential sources in prison disciplinary proceedings. Therefore, Brookman, Hart, and Spiller are not entitled to summary judgment on their qualified immunity defense to Count 1.

The Court has also determined that a genuine issue of material fact exists regarding whether Butler and Baldwin violated Gutierrez's Eighth Amendment right by subjecting him to unconstitutional conditions of confinement. Again, at the relevant time, it was clearly established by case law that subjecting an inmate to a cell covered in feces and other bodily excrement constituted cruel and unusual punishment, and that excessively small cells and overcrowding may violate the Eighth Amendment. Butler and Baldwin are therefore not entitled to summary judgment on their qualified immunity defense to Count 2.

**Request for Injunctive Relief**

In the Amended Complaint, Plaintiff requests that the Court issue a permanent injunction requiring Defendants to (1) expunge his disciplinary ticket for 205 security threat group; (2) institute policies sufficient to prevent similar wrongful convictions on charges issued pursuant to tips from confidential informants; and (3) prevent future violations of the Eighth Amendment due to conditions in the segregation wing at Menard Correctional Facility. Defendants argue Gutierrez is not entitled to injunctive relief because there is no ongoing violation and the relief he seeks is contrary to the PLRA.

Gutierrez remains incarcerated at Menard and subject to its disciplinary process, including being placed in the segregation cells in North II. Since his 2016 release from segregation, he has been placed in a cell in North II on at least three occasions. These facts are sufficient to support a finding that Gutierrez is reasonably likely to again be subject to North II's unconstitutional conditions of confinement. *See Turley v. Lashbrook*, No. 08-07-SCW, 2018 WL 585236, at *8 (S.D. Ill. Sept. 26, 2018). Gutierrez's request that he is not double-celled again in North II is minimally intrusive and does not require an affirmative action at this time on the part of the Menard warden or the IDOC. *See Turley v. Lashbrook*, No. 08-07-SCW, 2018 WL 7585236, at *8 (S.D. Ill. Sept. 26, 2018). And such an injunction would be in the public interest because "[h]ousing inmates in inhumane conditions that constitute cruel and unusual punishment under the Eighth Amendment to the Constitution cannot be condoned, or allowed to persist when such conditions are put before the Court." *Id.* Additionally, the expungement of a disciplinary violation from a prisoner's record is appropriate when that violation was established contrary to due process guarantees. *Redding v. Fairman*, 717 F.2d 1105, 1118 (7th Cir. 1983).

Because there are genuine issues of material fact regarding Plaintiff's claim for injunctive

relief, summary judgment will be denied on this issue as well.

## Damages

Defendants seek summary judgment on Gutierrez's claims for compensatory and punitive damages. Gutierrez has presented evidence on the record that he suffered from several physical injuries during his stay in North II segregation, including back pain from an inability to exercise and restricted movement, head and knee injuries from close quarters, weight loss, and bug bites. This evidence is sufficient to support his request for compensatory damages.

"Punitive damages are recoverable in § 1983 actions where the defendant had a reckless or callous disregard to the federally protected rights of others." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004). There is evidence in the record from which a jury could find that Brookman, Hart, and Spiller acted with reckless or callous indifference to Gutierrez's due process rights in the disciplinary proceedings. As a result, there are material disputes of fact that preclude summary judgment on the punitive damages claim related to Count 1. And given the long history of successful lawsuits regarding the conditions and size of cells in North II at Menard, , summary judgment is not appropriate as to the claim for punitive damages related to Count 2.

## DISPOSITION

Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to the claim in Count 1 against Butler, Baldwin, Lashbrook, and Hutchinson and as to the claim in Count 2 against Lashbrook and Hutchinson. The motion is **DENIED** as to the claim in Count 1 against Spiller, Brookman, and Hart, the claim in Count 2 against Butler and Baldwin, the claim for injunctive relief, and the claim for compensatory and punitive damages.

The case will proceed on the Fourteenth Amendment due process claim against William A. Spiller, Jason Hart, and Kent Brookman, (Count 1), the Eighth Amendment unconstitutional conditions of confinement claim against John Baldwin and Kimberly S. Butler (Count 2), the claim for injunctive relief, and the claims for compensatory and punitive damages.

The Clerk of Court is **DIRECTED** to terminate Jacqueline Lashbrook and Jeffrey A. Hutchinson as defendants and enter judgment in their favor at the close of the case.

**IT IS SO ORDERED.**

**DATED:**   **December 30, 2022**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**